T. Christopher Tuck (*admitted Pro Hac Vice*)
Ctuck@rpwb.com
RICHARDSON, PATRICK WESTBROOK
& BRICKMAN, L.L.C.
P.O. Box 1007
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
Facsimile: (843) 216-6509

Charles S. Price
Charles.Price@mwmf.com
Tricia Schafer
Tricia.Schafer@mwmf.com
MARISCAL, WEEKS, MCINTYRE &
FRIEDLANDER, P.A.
2901 North Central Avenue
Suite 200
Phoenix, AZ 85012
Telephone: (602) 285-5000
Facsimile: (602) 285-5100

*Attorneys for Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| KAREN M. STRATTON, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>American Medical Security, Inc., n/k/a American Medical Security Life Insurance Company; United Wisconsin Life Insurance Company, | Case No. CV 07-1491-PHX-SMM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

```
n/k/a American Medical Security        )
Life Insurance Company; American       )
Medical Security Group, Inc.; and      )
Taxpayers Network, Inc.,               )
d/b/a The Taxpayers Network,           )
                                       )
              Defendants.              )
_____)
```

Plaintiff, Karen M. Stratton, on behalf of herself and all others similarly situated, through her undersigned counsel, submits the following memorandum in opposition to Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) ("Motion to Dismiss").

## I.  INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Karen M. Stratton brings this class action on behalf of herself and all Arizona residents who purchased a MedOne health insurance policy underwritten by United Wisconsin Life Insurance Company ("United Wisconsin"), administered by American Medical Security, Inc., and American Medical Security Group, Inc. (collectively "AMS"), and marketed by Taxpayers Network, Inc., now doing business as The Taxpayers Network ("Taxpayers"). American Medical Security, Inc. and United Wisconsin have merged to form American Security Life Insurance Company.

Defendants marketed and sold the MedOne health insurance product to Plaintiff as a purported group policy; however, one court has already found that the policy did not perform as such.

> The primary purpose of group insurance is to spread and share the risk among a group of insureds. Typically, a group policy is issued

> to a policyholder and the individual insureds are issued certificates of insurance rather than individual policies. The working principle behind the group insurance concept is that the risk is spread by pooling the risk according to what is sometimes referred to as the 'law of large numbers.' According to the 'law of large numbers,' people within the group pay premiums based on factors irrespective of whether or not they are healthy or whether or not they make claims. If the carrier decides to raise premiums, it must do so for the entire group and not single out individuals based on their health status or claims history.

*Addison v. Am. Med. Sec.*, No. CL 00-01445 AB, 2002 WL 1454102, at *6 (Fla. Cir. Ct. Apr. 24, 2002). "[T]he ongoing underwriting of the group must be based on the experience of the group, and not on the claim history of any particular insured. *Id.* In *Addison*, the defendants "engaged in annual re-underwriting 'tier rating'. . . . Under this system, individual insureds were re-underwritten each year." *Id.* (emphasis in original). The *Addison* court held that "[s]uch conduct defies the purpose of group health insurance." *Id.* at *7.

As alleged in Plaintiff's Complaint, future premium renewals were to be spread equally among all group policyholders at the same rate. Complaint at ¶ 2. The rates should have been averaged broadly among the insureds in the group. Instead, the premium renewals were determined on individual underwriting criteria based on the individual's health status or claims history, thus making the policy no different from an individual policy. *Id.* at ¶ 25.

Plaintiff was also required to pay membership fees to Taxpayers as a condition of her MedOne coverage. *Id.* at ¶ 3. Defendants have engaged in a fraudulent course of conduct by failing to disclose to Plaintiff and the class that

portions of Taxpayers' membership fees were not for services provided by Taxpayers, but were instead to be remitted to AMS and United Wisconsin as added compensation, essentially constituting a kickback to AMS and Wisconsin. *Id.* By failing to disclose this kickback to purchasers of its membership products, Taxpayers artificially inflated the actual cost of its services for the pecuniary benefit of AMS and United Wisconsin. *Id.*

## II. ARGUMENT

### A. Motions to dismiss are disfavored and rarely granted.

Motions to dismiss for failure to state a claim are disfavored and are rarely granted because a determination on the merits is preferred. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Fed. R. Civ. P. 8(a)(2) only requires that the complaint set out a general statement of the facts showing that the pleader is entitled to relief. The question presented is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his or her claim. In answering this question, a court must assume that plaintiff's allegations are true, construe the complaint in a light most favorable to plaintiff, and resolve every doubt in plaintiff's favor. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### B. This Court has jurisdiction over Plaintiff's claims.

Defendants rely on *Williams v. Bankers Nat'l Ins. Co.*, 80 Ariz. 294 (1956), to support their argument that Plaintiff must first exhaust all administrative remedies prior to filing suit. This reliance is misplaced. Defendants have used select portions of *Williams* to attempt to show the necessity of exhausting administrative remedies in all circumstances (under the Insurance Code) before seeking redress in the courts. The *Williams* court, however, was not making a blanket statement applicable to all claims against insurance companies as Defendants would have this Court believe. *Williams* was addressing a specific law "relating to the governing and to the taxation of insurance companies" that "specifically states the procedure to be followed in any instance in which any person is aggrieved by an act or threatened act of the director of insurance who must enforce the payment of their taxes from such insurance companies." *Id.* at 301. The exhaustion doctrine does not apply to this case because this Court has primary jurisdiction over this matter.

"The exhaustion doctrine is concerned with the timing of judicial review of administrative action." *Campbell v. Mountain States Telephone & Telegraph Co.*, 120 Ariz. 426, 429 (1978) (quoting 3 K. Davis, *Administrative Law Treatise*, § 20.01 at 57 (1958)). "The doctrine applies *only when an administrative agency has original jurisdiction.* Once such jurisdiction exists, the exhaustion of remedies doctrine is used to determine whether or not the parties must completely exhaust the available administrative processes before seeking the aid of the court." *Campbell*, 120 Ariz. at 429 (emphasis added).

"In contrast to the exhaustion of remedies doctrine, which governs when administrative action is subject to judicial review, the doctrine of primary jurisdiction determines whether the court or agency should make the initial decision in a particular case." *Id.* "The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that 'administrative expertise' requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and the courts." *Id.* at 430 (citing 3 K. Davis, *Administrative Law Treatise*, § 19.01 at 3-5.) "[I]n cases *raising issues of fact not within the conventional experience of judges* or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Id.* at 430 (quoting *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952) (emphasis added).

This Court has primary jurisdiction over Plaintiff's claims because there are no issues of fact not within the conventional experience of this Court. Plaintiff's causes of action are grounded in tort and contract. It has long been recognized that tort and contract claims are traditional claims best handled by the courts. "[T]ort and contract claims are the type of traditional claims with which our trial courts of general jurisdiction are most familiar and capable of dealing." *Id.* at 432; *see Trico Elec. Coop. v. Ralston*, 67 Ariz. 358 (1948); *Gen. Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 381 (1976); *Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26

6

(1961). The *Campbell* Court noted that while the plaintiff's claims did involve issues within the agency's jurisdiction, the issues were not predominating. *Campbell*, 120 Ariz. at 432. Like *Campbell* this case "involves relatively simple tort and contract issues revolving around a central inquiry: whether, under traditional judicial principles, [defendant] committed a civil wrong against [plaintiff]." *Id.*

Courts routinely handle cases filed over insurance contract disputes. *See, e.g., In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998). Indeed, the MedOne policies at issue here have already been the subject of litigation in at least five other states (four to conclusion), and none of these actions have required assistance from the Department of Insurance.[1] Also telling is the fact that Defendants do not cite a single case where a court did not have jurisdiction over a matter where similar claims were asserted.

Plaintiff's Complaint is based on two rather simple allegations. First, Plaintiff alleges that Defendants sold her a purported group policy whose future premium increases were to be spread equally over all group policyholders at the same rate. Instead, Plaintiff was not provided with group insurance, and her premium renewals were calculated based upon individual underwriting criteria, making her policy no different than an individual policy. Complaint at ¶¶ 25, 26.

---

[1] *See, e.g., Addison v. Am. Med. Sec.*, No. CL 00-01445 AB, 2002 WL 1454102 (Fla. Cir. Ct. Apr. 24, 2002) (court finding in favor of plaintiffs on question of liability); *also see Wright v. Am. Med. Sec.*, C.A. No. 2004-CP-42-3698 (SC Ct. Com. Pl. Feb. 16, 2006) (order accepting stipulation of settlement, certifying temporary settlement class) and *Gadson v. United Wis. Life Ins. Co.*, C.A. No. CV-02-1601 (AL Cir. Ct. Sept. 29, 2004) (order of final approval and judgment resolving all claims of Georgia and Alabama residents); attached as Exhibits A and B to Declaration of T. Christopher Tuck.

Plaintiff further alleges that Defendants failed to disclose kickbacks to purchasers of their membership products, thereby artificially inflating the actual cost of their services for their own pecuniary benefit. *Id.* at ¶ 27. These allegations are within the conventional experience of this Court, and no "administrative expertise" will be needed. Therefore, a transfer of power from the courts to the agency is not warranted in this case.

**C.     Plaintiff may plead unjust enrichment in the alternative.**

The Federal Rules of Civil Procedure state that a plaintiff may plead alternately. Rule 8(e)(2) provides:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses . . . . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

Fed. R. Civ. P. 8(e)(2).

"The doctrine of unjust enrichment is a 'flexible, equitable remedy available whenever the court finds that "the defendant . . . is obliged by the ties of natural justice and equity" to make compensation for the benefits received.'" *Arnold & Assoc., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1024 (D. Ariz. 2003) (quoting *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985)). "Under the Federal Rules, a plaintiff may set forth inconsistent legal theories in its pleadings and will not be forced to elect a single theory on which to seek recovery." *Arnold*, 275 F. Supp. 2d. at 1030 n. 11. "Plaintiff may therefore

seek both an equitable remedy . . . and a legal remedy for breach of contract." *Id.* at 1031.

### D.   Plaintiff has alleged a valid breach of contract claim.

Defendants argue in their Motion to Dismiss that Plaintiff has failed to allege a breach by the Defendants. "To prevail on a breach of contract claim, [a plaintiff] must show the existence of a contract, breach of that contract's terms, and resulting damage." *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1160 (D. Ariz. 2005). It is evident that a contract existed, as Defendants have attached Group Insurance Policy certificates issued to Plaintiff by Defendants in support of their Motion to Dismiss. *See* Exhibits A-E of Declaration of Amber Schumacher in Support of Defendants' Motion to Dismiss Complaint ("Declaration of Amber Schumacher").

Plaintiff has alleged a breach of contract. The MedOne policy was marketed and sold as a group insurance policy where all premium increases were to be spread equally over all group policyholders at the same rate. Complaint at ¶¶ 25, 26, 37, 38. At no time did Defendants inform Plaintiff that her policies were subject to individual tier rating underwriting methods, nor was there any mention of individual tier rating in the certificates issued by Defendants. Indeed, all of the certificates attached to the Declaration of Amber Schumacher state that the policies are group policies, giving Plaintiff no indication that the policy would be underwritten in any way other than as a typical group policy would. *See* Declaration of Amber Schumacher, Exhs. A-E. Moreover, the first page of the

certificate is entitled, "Group Insurance Policy," and further provides that the "Policy provides *group* accident and sickness insurance. It also provides optional coverages including but not limited to *group* term life insurance, *group* accidental death and dismemberment insurance, *group* dental insurance and *group* disability income insurance." *See* p. 1 of Exhs. A-E (emphasis added). Put quite simply, Plaintiff's Complaint has properly alleged—and the materials submitted with the Declaration of Amber Schumacher confirm—that Defendants breached their contract with Plaintiff.

### E.     Plaintiff has properly alleged an actionable breach of fiduciary duty.

Defendants argue that Plaintiff has failed to allege an actionable breach of fiduciary duty. Insurers are, however, fiduciaries to their insureds. "[T]he insurance relationship is unique from that of other contracts because it is 'characterized by elements of public interest, adhesion, and fiduciary responsibility.' The insured receives intangible benefits from the relationship, such as peace of mind and the knowledge that the carrier will give equal consideration in all matters to the insured's interests." *Taylor v. State Farm Mutual Ins. Co.*, 185 Ariz. 174, 176 (1996) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 158 (1986) (internal citation omitted)). Defendants rely on *Rawlings v. Apodaca* to support their assertion that it breached no fiduciary duty owed to Plaintiff. The duties cited in *Rawlings*, though, are the very duties breached by Defendants. An insurer "has some duties of a fiduciary nature. Equal consideration, fairness and honesty are among them." Rawlings, 151 Ariz. at 155.

Defendants breached these fiduciary duties to Plaintiff when Defendants did not treat Plaintiff fairly or honestly. Plaintiff has alleged that the Defendants misrepresented the nature of her policy and artificially inflated the actual cost of Taxpayers' membership fees by using a portion of her fees to provide a kickback for the benefit of United Wisconsin and AMS. Complaint at ¶¶ 25, 26, 27. Further, Defendants did not give Plaintiff "equal consideration" because they determined her premiums on an individual basis instead of spreading and sharing the risk among the group as promised, *id.* at ¶¶ 25, 26, 42; indeed, there can be no equal consideration of the insured's interests, by definition, where the insured is defrauded as to the nature of the insurance provided.

**F.  Plaintiff has alleged an actionable breach of the covenant of good faith and fair dealing.**

The law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986); *see also Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1163 (D. Ariz. 2005). "The duty arises by virtue of a contractual relationship." *Rawlings*, 151 Ariz. at 153. "The purpose of the implied covenant of good faith and fair dealing is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Howell*, 362 F. Supp. 2d at 1163 (quoting *Rawlings*, 151 Ariz. at 153). "The implied covenant is breached when one party prevents the other party to the contract 'from receiving the benefits and entitlements of the agreement.'" *Howell*, 362 F. Supp. 2d at 1163 (quoting *Wells*

*Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002)). Arizona law holds that "a party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract." *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 760 (Ariz. App. 2006).

Plaintiff has alleged two breaches of the implied covenant of good faith and fair dealing in her Complaint. Plaintiff has alleged that Defendants marketed and sold their MedOne policy as "group" insurance with rates that were to be spread equally over all group policyholders at the same rate. Complaint at ¶ 2. It is a violation of Arizona's Administrative Code, for example, to improperly advertise the nature of a group policy. "An advertisement shall not *state or imply* that prospective policyholders become group or quasi-group members and enjoy special rates or underwriting privileges, unless it is true." Ariz. Admin. Code R20-6-201 (emphasis added). Finally, Plaintiff has properly alleged that Defendants breached duties of a fiduciary nature by applying portions of membership monies as added remuneration to United Wisconsin and AMS. These allegations are sufficient to meet the pleading requirements for a claim brought under the covenant of good faith and fair dealing.

**G.    Plaintiff's consumer fraud and insurance fraud claims are proper and Plaintiff has pled fraud with sufficient particularity.**

   **1.    Pleading violations of the Consumer Fraud Act.**

Pleading violations of the Consumer Fraud Act does not require the degree of specificity that is required when pleading common law fraud. "The elements of a claim for relief under the Consumer Fraud Act are not necessarily identical to the elements of a common law fraud action. A violation of the Act is more easily shown." *Peery v. Hansen*, 120 Ariz. 266, 269 (Ariz. App. 1978). "The enactment of the Consumer Fraud Act enlarged upon the rights of private parties in Arizona to file actions in fraud." *Id.* "[It] is a broad act intended to eliminate unlawful practices in merchant-consumer transactions." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). The Act defines unlawful practice as:

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or *concealment, suppression or omission of any material fact* with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise whether or not any person has in fact been mislead, deceived, or damaged thereby . . . .

*Id.* (emphasis added). "The elements of the private cause of action are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Id.* (citing *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605 (Ariz. App. 1980); *Peery v. Hansen*, 120 Ariz. 266, 270 (Ariz. App. 1978)). "Injury occurs when the consumer relies on the misrepresentation, even though reliance need not be reasonable." *Correa*, 126 Ariz. at 605.

Further, in an action based on the Consumer Fraud Act, a plaintiff is not required to show a right to rely. In *Peery*, the court held that if the plaintiffs did

not actually know a statement was false, but should have known, then the court "would have erred in entering judgment against them." *Peery*, 120 Ariz. at 270. "[T]he right to rely, though a necessary element in a common law fraud action, is not essential to a statutory fraud action in Arizona." *Id.*

Plaintiff has sufficiently pled the elements for Defendants' violations of the Consumer Fraud Act. She has alleged that Defendants misrepresented the nature of the MedOne policy as being a "group" policy during the marketing and sale of said policy, and she has alleged that she paid an inflated membership fee due to a kickback paid by Taxpayers to United Wisconsin and AMS. Plaintiff's reliance on the misrepresentations of Defendants is evident in that she purchased the policy believing it was underwritten as a typical group policy. Plaintiff has further alleged she was damaged by the conduct of Defendants, *see* Complaint ¶¶ 2-4, 25-27, 48, 49, and that Defendants carried out the illegal conduct through the exchange of employees. Complaint ¶¶ 28, 29.

Finally, as evidenced in Defendants' motion to dismiss, which resembles a motion for summary judgment, Plaintiff has pled sufficiently enough to "give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

    2.    **Pleading violations of A.R.S. § 20-443.**

Similarly, a plaintiff is not required to plead the nine elements of common law fraud when alleging a violation of A.R.S. § 20-443. "Plaintiff must plead with

particularity the statutory elements found in [§ 20-443]." *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 645 (D. Ariz. 2001). "A misrepresentation in violation of A.R.S. § 20-443 is one that concerns the 'terms' of a policy, its 'benefits' or 'advantages,' or its 'true nature.'" *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610-11 (Ariz. App. 2000).

Plaintiff has sufficiently pled a misrepresentation in violation of A.R.S. § 20-443 based on the terms, benefits, advantages, and true nature of the policy. *Supra* at 13-14. Plaintiff has alleged that Defendants misrepresented the terms, benefits, advantages, and true nature of the policy by providing her a purported "group" policy that was underwritten just as an individual policy would be, making it no different than an individual policy, and by artificially inflating her membership fees for the pecuniary benefit of Defendants.

### 3. Leave to amend should be granted if Plaintiff can correct any defect in her Complaint.

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. '[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Id.* at 1108 (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1998); *see also Bly-Magee*, 236

F.3d at 1019 (when dismissing for failure to comply with Rule 9(b) "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts") (internal quotation marks omitted); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (when plaintiff requests leave to amend complaint in the event the court is inclined to dismiss on Rule 9(b) grounds, "the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile.").

If this Court finds that Plaintiff has failed to sufficiently allege Defendants' violations of the Consumer Fraud Act and A.R.S. § 20-443, Plaintiff respectfully requests this Court to permit her to amend her Complaint.

**H. Plaintiff's claims are not barred by the statute of limitations.**

Defendants make the claim that Plaintiff would have been on inquiry notice if she believed the premium increases were too high. This allegation, by itself, exposes the factual nature of their argument, which is inappropriate at the motion to dismiss stage.

Further, Defendants' arguments regarding the alleged relevant statutes of limitation are devoid of any reference as to what triggers the respective limitation periods (i.e., wrongful conduct or discovery). Defendants' Motion to Dismiss, p. 16. Under Arizona's discovery rule, "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins.*

*Co. of Am.*, 182 Ariz. 586, 589 (1995). Factual arguments, such as when Plaintiff would have been on inquiry notice should not be decided at this stage of the litigation. "[W]hen Plaintiff knew or should have known about the fraud and misrepresentation claims is a factual question properly decided after discovery." *Frew v. Coit Svcs., Inc.*, No. CV-07-1372-PHX-DGC, 2007 WL 2903026, at *2 (D. Ariz. Oct. 2, 2007). Also missing from Defendants' argument is any discussion or reference to the six year statute of limitations period for breach of contract. A.R.S. § 12-548.

### III.   CONCLUSION

WHEREFORE, Plaintiff, Karen M. Stratton, respectfully requests this Honorable Court to deny Defendants' Motion to Dismiss Complaint.

DATED this 9th day of November, 2007.

<div style="text-align: right;">

/s/ T. Christopher Tuck
T. Christopher Tuck
(*admitted Pro Hac Vice*)
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.
P.O. Box 1007
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
Facsimile: (843) 216-6509

Charles S. Price
Tricia Schafer
MARISCAL, WEEKS, MCINTYRE &
FRIEDLANDER, P.A.
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012
Telephone: (602) 285-5000
Facsimile: (602) 285-5100

</div>

## CERTIFICATE OF SERVICE

     I hereby certify that on this 9th day of November, 2007, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

Willaim E. Grauer
Mazda K. Antia
Heather C. Meservy
COOLEY GODWARD KRONISH LLP
4401 Eastgate Mall
San Diego, CO  92121
Attorneys for Defendant
grauerwe@cooley.com
mantia@cooley.com
hmeservy@cooley.com

John C. West
JENNINGS, STROUSS & SALMON
201 East Washington Street
11th Floor
Phoenix, AZ  85004
Attorney for Defendant
jwest@jsslaw.com


By  /s/ T. Christopher Tuck