**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen M. Stratton, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>American Medical Security, Inc., n/k/a American Medical Security Life Insurance Company; United Wisconsin Life Insurance Company, n/k/a American Medical Security Life Insurance Company; American Medical Security Group, Inc.; and Taxpayers Network, Inc. d/b/a The Taxpayers Network,<br><br>Defendants. | No. CV-07-1491-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is a Motion to Dismiss Plaintiff's Complaint by Defendants American Medical Security, Inc., United Wisconsin Life Insurance Company, and American Medical Security Group, Inc., now known as American Medical Security Life Insurance Company (collectively "AMS"), and Taxpayers Network, Inc. ("TNI"). (Dkt. 27, Defs.' Mot. to Dismiss.) A timely response was filed by Plaintiff. (Dkt. 38, Pl.'s Resp.) A Reply

brief was filed on November 29, 2007. (Dkt. 40, Defs.' Reply.) Having considered the parties' arguments,[1] the Court issues the following order.

## BACKGROUND

Plaintiff filed a complaint in federal district court on August 2, 2007. (Dkt. 1, Compl.) This is a purported class action suit[2] brought on behalf of Plaintiff for all the residents of the State of Arizona who purchased MedOne health insurance from AMS and which was marketed by TMI. (Compl. ¶ 1.) Plaintiff alleges that Defendants sold the MedOne health insurance to Plaintiff as a purported group policy. (Compl. ¶¶ 2-4.) In addition, Plaintiff further alleges future premium increases were not spread equally over all group policyholders at the same rate. (Compl. ¶¶ 2-4.) Therefore, Plaintiff argues that she was not sold group insurance, but rather an individual policy based on individual underwriting criteria. (Compl. ¶ 2.)

Plaintiff further alleges that she was required to pay membership fees to TNI for the MedOne coverage and that these membership fees constituted a kickback to AMS, which constitutes a fraudulent course of conduct. (Compl. ¶ 3.) Plaintiff asserts that these events are common to all class members and have cost Arizona residents more than five million dollars in undisclosed and misappropriated expenditures. (Compl. ¶ 4.) Therefore, Plaintiff asserts the following six claims: (1) unjust enrichment, (2) breach of contract, (3) breach of fiduciary duty, (4) breach of implied covenant of good faith and fair dealing, (5) violation of consumer fraud act, and (6) violation of A.R.S. § 20-443. (Compl. ¶¶ 33-52.)

Defendants[3] argue that the Complaint should be dismissed. According to the Defendants, Plaintiff's six causes of action are all premised on two erroneous allegations.

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and evidence, and oral argument will not aid the Court's decision. *See* Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

[2] At this point in time, Plaintiff has not filed for class certification.

[3] For the sake of brevity, the Court uses the term "Defendants" to refer to both AMS and TMI.

- 2 -

(Defs.' Mot. to Dismiss 1.) The first is that the AMS policy does not represent group insurance under Arizona law. (Defs.' Mot. to Dismiss 1.) Secondly, the failure of TMI to disclose how their fees are disbursed violates the law. (Defs.' Mot. to Dismiss 1.) In addition, Defendants argue that the Arizona Department of Insurance has jurisdiction over this matter and thus should be dismissed until all administrative remedies are exhausted. (Defs.' Mot. to Dismiss 7-9.)

Defendants also assert that Plaintiff's claims are legally deficient because (1) the unjust enrichment claim should fail since a binding contract exists, (2) the breach of contract claim fails because a breach has not been alleged, (3) the Defendants are not fiduciaries and thus, Plaintiff cannot have an actionable breach of fiduciary duty, (4) the claim for breach of implied covenant of good faith and fair dealing must fail because no duty exists, (5) Plaintiff's consumer fraud and insurance fraud claims fail because there was no misrepresentation and Plaintiff has failed to plead fraud with the required particularity, and (6) the claims are barred by the statutes of limitations. (Defs.' Mot. to Dismiss 7-17.) In addition, Defendants, in their reply in support of their motion to dismiss, argue that Plaintiff should not be given an opportunity to amend their complaint.

**STANDARD OF REVIEW**

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that

1 the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942
2 F.2d 1467, 1472 (9th Cir. 1991). When exercising its discretion to deny leave to amend, "a
3 court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the
4 merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977,
5 979 (9th Cir. 1981).

## DISCUSSION

### *A.    Jurisdiction*

8    The doctrine of exhaustion of remedies applies only when an administrative agency
9 has original jurisdiction. *Campbell v. Mountain States Telephone & Telegraph Co.*, 586
10 P.2d 987, 990 (Ariz. Ct. App. 1978). Once that original jurisdiction has been established, the
11 doctrine of exhaustion is used to determine whether the parties need to pursue all
12 administrative processes prior to seeking review by the court. *Id.*; *see also* A.R.S. § 40-253
13 (A)-(B). An administrative agency's statutorily defined purposes and powers are indicators
14 of the agency's particular skill and expertise in a specific area. However, the doctrine of
15 primary jurisdiction is less concerned with administrative expertise and more concerned with
16 "the need for orderly and sensible coordination of the work of agencies and of courts."
17 *Campbell*, 586 P.2d at 991. If the court were to decide matters within the expertise of an
18 administrative agency the parties subject to the agency's continuous regulation may become
19 victims of uncoordinated and conflicting requirements. *Id.*

20    Therefore, primary jurisdiction must be evaluated by looking to the allegations of the
21 complaint and the agency expertise required to decide the issues. Absent statutory language
22 to the contrary, if the predominant issue is civil wrongs, tort or breach of contract, and not
23 a technical area specific to the agency, then agency expertise is not required and moving the
24 action to the agency is not necessary.

25    Plaintiff's claims are based in tort and contract law. (Pl.'s Resp. 7-8.) The first
26 allegation is that Defendants sold Plaintiff a purported group policy whose future premium
27 increases were to spread evenly over all group policyholders at the same rate. (Pl.'s Resp.
28 7.) Plaintiff argues that she was not provided with group insurance and that her premium

- 4 -

1 renewals were based upon individual underwriting criteria, thus making her policy an
2 individual policy. (Pl.'s Resp. 8.) Plaintiff further alleges that Defendants failed to disclose
3 that a portion of a membership fee that she was required to pay to TNI was given to AMS
4 in the form of a kickback. (Pl.'s Resp. 8.) In addition, the Arizona Department of Insurance
5 is not given primary jurisdiction over claims arising primarily in tort and contract law and
6 have not arisen from within the agency. *See* A.R.S. § 40-253 (A)-(B) (stating that an Arizona
7 agency has primary jurisdiction over matters that have been decided before or arising from
8 that agency). Therefore, the Court finds that the Arizona Department of Insurance does not
9 have primary jurisdiction over Plaintiffs's claims. Pursuant to 28 U.S.C. §§ 1332 and 1367,
10 the Court has proper jurisdiction to decide this matter.

### B.     *Motions to Dismiss and Statute of Limitations*

Defendants contend that the applicable statutes of limitations bar Plaintiff's fraud, misrepresentation, breach of fiduciary duty and implied covenant of good faith and fair dealing, and unjust enrichment claims. (Defs.' Mot. to Dismiss 16-17.) Plaintiff maintains that all claims are timely. (Pl.'s Resp. 16-17.)

A motion to dismiss based on a statute of limitations defense is properly brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993). Filing within the appropriate limitations period is not a prerequisite to subject matter jurisdiction, and thus should not be raised on a Rule 12(b)(1) motion to dismiss. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).

A dismissal motion based on the running of the applicable limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). A court should not dismiss a complaint unless it is beyond doubt that the plaintiff can prove no set of facts that would demonstrate the timeliness of the claim. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 78 (1957)). Since the court cannot consider materials outside the pleadings for Rule 12(b)(6) purposes, and since the applicability of the

1 equitable tolling doctrine often depends on matters outside the pleadings, whether a claim 2 is time-barred is "not generally amenable to resolution on a Rule 12(b)(6) motion." 3 *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

4       The parties agree on the applicable limitation periods, but disagree on when the 5 periods began to run. The statute of limitations period for an unjust enrichment claim is four 6 years. *See* A.R.S. § 12-550. Claims for breaches of fiduciary duty and implied covenant of 7 good faith and fair dealing have a statute of limitations period of two years. *See* A.R.S. § 12- 8 542. Consumer Fraud Act claims and insurance fraud claims have limitations periods of one 9 year. *See* A.R.S. § 12-541. Under Arizona's discovery rule, a "plaintiff's cause of action 10 does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should 11 know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.* 12 *of Am.*, 898 P.2d 964, 966 (Ariz. 1995).

13       Defendants contend that Plaintiff's cause of action began to accrue before she 14 purchased her policy in October 2000, at the earliest, but no later than November 2004, when 15 she terminated her policy. (Defs.' Mot. to Dismiss 16.) Plaintiff filed her Complaint on 16 August 2, 2007, seven years after she purchased the policy and three years after she 17 terminated her policy. *(See* Compl.) However, Plaintiff alleges that Defendants fraudulently 18 concealed the information necessary to pursue the claims. (Compl. ¶ 30.)

19       Taking Plaintiff's allegation of fraudulent concealment to be true, as the Court must, 20 the statute of limitations would toll under the Arizona discovery rule. *Gust*, 898 P.2d at 966. 21 As such, Plaintiff can prove a set of facts that would establish the timeliness of the claim. 22 *Cf. Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998). Defendants' motion 23 is therefore denied as to the statute of limitations.

24      ***C.***    ***Defining Group Insurance Under Arizona Law***

25       The overarching issue in this matter is whether the MedOne policy sold to Plaintiff 26 was a "group" insurance policy under Arizona law. Defendants argue that the MedOne 27 policy was valid group disability insurance under Arizona law essentially because the policy 28 was sold as group insurance and Defendants believe it is within the definition given under

Title 20 of the Arizona Revised Statutes. (Defs.' Mot. to Dismiss 4-6.) Plaintiff contends that the MedOne policy is not group insurance under Arizona law because the premiums were not calculated as a group, but rather on an individual basis.

Under Arizona law, group disability insurance is defined in A.R.S. § 20-1401. The statute lists five categories of group disability insurance. *See* A.R.S. § 20-1401. However, in absence of discovery and the facts that would undoubtedly come from that investigative period, it is not clear from the language of the statute and based on the facts alleged in the Complaint if the AMS policy qualifies as group insurance under Arizona law. Plaintiff relies on a Florida state court case, which appears to address similar issues under Florida law. *Addison v. Am. Med. Sec.*, No. CL 00-01445 AB, 2002 WL 1454102 (Fla. Cir. Ct. Apr. 24, 2002). Nevertheless, this Court would need to base its decision on Arizona law to determine if the AMS policy was a group insurance policy for purposes of Arizona law. The Court cannot determine on the pleadings whether TNI is "maintained in good faith for purposes other than obtaining insurance," therefore, the Court cannot say that TNI falls within A.R.S. § 20-1401(A)(2). The Court finds that although statutory construction generally presents a question of law, absent additional factual information, the Court is unable to rule on this issue as a matter of law at this juncture.

### D.   *Breach of Contract Claim*

"To prevail on a breach of contract claim, [a plaintiff] must show the existence of a contract, breach of that contract's terms, and resulting damage." *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1160 (D. Ariz. 2005) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). It is apparent that Plaintiff sufficiently alleges that a contract existed between Plaintiff and AMS. (*See* Compl. ¶¶ 2, 37.) Plaintiff claims that Defendants breached the contract by failing to provide group insurance and improperly applying portions of membership fees as added remuneration to AMS. (Compl. ¶ 38.) Defendants argue that because Plaintiff is unable to point to a specific provision of the contract that has been breached the claim fails as a matter of law. (Defs.' Mot. to Dismiss 10-11.) Plaintiff contends that the first page of the certificate is entitled, "*Group* Insurance Policy," and

further provides that the "[p]olicy provides *group* accident and sickness insurance." Plaintiff argues no provision in the contract informed Plaintiff that she was not purchasing group insurance.

Insurance policies are subject to the general rules of contract construction. Interpretation of an insurance contract presents questions of law. *Liberty Insurance Underwriters, Inc. v. Weitz Company, LLC*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007). To give meaning to all terms, the insurance policy provisions must be read as a whole. *Id.* "If the contractual language in an insurance policy is clear, courts will afford it its plain and ordinary meaning and apply it as written." *Id.* (citations omitted). Generally, "courts construe the written terms of insurance contracts to effectuate the parties' intent and 'to protect the reasonable expectations of the insured.'" *Id.* (citations omitted).

Essentially, the breach of contract claim hinges on defining "group policy" under Arizona law. Plaintiff points to the specific language in the contract that specifies that she was purchasing *group* insurance. However, Plaintiff has not pointed to a specific provision in the contract with TNI that has been breached by TNI. Therefore, the breach of contract claim can go forward as against AMS, but the claim against TNI has not been sufficiently pled.

### E.     *Unjust Enrichment*

In Arizona, recovery under the theory of unjust enrichment requires the following: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment, and (5) an absence of a remedy provided by law. *City of Sierra Vista v. Cochise Enterprises, Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984). Plaintiff contends that Plaintiff and the class, in the form of paying for purported group insurance and membership benefits, suffered an impoverishment. Defendants by receiving these premiums for what they purported to be group insurance received an enrichment. Plaintiff alleges as a direct and proximate result of Defendants' breach, Plaintiff and the class are entitled to restitution on the full amount by

which the Defendants have been unjustly enriched and should be required to disgorge the same to Plaintiff and the class.  (Compl. ¶ 35.)

Defendants argue that Plaintiff is not entitled to recovery under the theory of unjust enrichment because a specific contract governs the relationship of the parties. (Defs.' Mot. to Dismiss 10.)  Therefore, Defendants argue, Plaintiff's unjust enrichment claim must fail. However, a "party may set forth two or more statements of a claim or defense alternatively or hypothetically" and "may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed. R. Civ. P. 8(e)(2).  Therefore, Plaintiff is entitled to allege as many claims, even if inconsistent, as she deems necessary to successfully facilitate a remedy.  Plaintiff's unjust enrichment claim will be permitted to go forward.

### *F.*     *Breach of Fiduciary Duty*

Defendants argue that they are not fiduciaries and that Plaintiff has failed to allege an actionable breach of fiduciary duty. (Defs.' Mot. to Dismiss 11.)  Although Defendants acknowledge that some fiduciary duties may arise in the relationship between an insurer and insured, they contend that no fiduciary duty exists between insurer and insured in relation to computing premiums. (Defs.' Mot. to Dismiss 11.)  Defendants further argue that an association, such as TNI, does not owe a fiduciary duty to its members. (Defs.' Mot. to Dismiss 11.) Plaintiff contends a fiduciary duty does exist between AMS and Plaintiffs, and that Defendants have breached that duty by not treating Plaintiff fairly and honestly. (Pl.'s Resp. 11.) Plaintiff alleges that Defendants misrepresented the nature of insurance coverage provided to Plaintiff. (Pl.'s Resp.  11.)

It is arguable that a fiduciary relationship[4] exists between an insured and insurer, and from that relationship duties of a fiduciary nature arise. Some courts are more aggressive than others in finding the duty[5] and others are reluctant to label it as such. "[A]lthough...we do not go so far as to hold that insurer is a fiduciary, [we] do hold that it does have some duties of the fiduciary nature. Equal consideration, fairness and honesty are among them." *Rawlings v. Apodaca*, 726 P.2d 565, 571 (Ariz. 1986). In Arizona, it appears that although an insurer might not be a full fiduciary, certain duties of a fiduciary nature are owed to the insured. *Id.* In light of these duties of a fiduciary nature, Plaintiff's Complaint provides sufficient notice of the nature of the claims to meet the requirements under the Federal Rules of Civil Procedure against AMS. *See* Fed. R. Civ. P. 8. However, a breach of fiduciary duty requires allegation that a fiduciary duty does exist. Plaintiff alleges she was a member of TNI, but does not allege that the membership created a fiduciary duty. (Compl. ¶ 40-43.) Defendant points out that associations generally do not owe fiduciary duties to their members. (Defs.' Mot. to Dismiss 11 (citing *Rohde v. Bextak of Ariz., Inc.*, 793 P.2d. 140, 145 (Ariz. Ct. App. 1990)).). Plaintiff's Response focuses on quasi-fiduciary relationship between insurer and insured, but TNI is not alleged to be an insurer of Plaintiff. Plaintiff therefore fails to allege an essential element of her claim for breach of fiduciary duty against TNI. Accordingly, it fails to state a claim as against TNI.

---

[4] Black's Law Dictionary defines a fiduciary relationship as a relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who has a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer. BLACK'S LAW DICTIONARY 640 (7th ed. 1999).

[5] Arizona courts seem to be more aggressive than others in finding that a fiduciary duty does exist between insurer and insured. *See. e.g.*, Allstate Indem. Co. v. Ridgely, 153 P.3d 1069, 1071 (Ariz. Ct. App. 2007) (holding that "the insurer has a fiduciary duty to notify its insureds that coverage issues existed....").

1  Accordingly, at this juncture, the Plaintiff's claim for breach of fiduciary duty against Defendants AMS can proceed. However, Plaintiff's claim for breach of fiduciary duty against Defendant TNI is dismissed.

### G. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants argue that for a successful claim for breach of implied covenant of good faith and fair dealing, Plaintiff must show that Defendants acted unreasonably and that Defendants knew their conduct was unreasonable or that Defendants acted with such reckless disregard that knowledge can be imputed to them. (Defs.' Mot. to Dismiss 13-14.) Defendants further argue that Plaintiff does not deny that the MedOne product was valid group coverage pursuant to A.R.S. § 20-1401(A)(2), or allege that the contract or Arizona law requires an equal spreading of rate increases throughout a group irrespective of hazard level. (Defs.' Mot. to Dismiss 13-14.) Further, Defendants argue that they were under no duty to disclose that a portion of the membership fees paid to TNI were remitted to AMS or how this payment contradicts Plaintiff's "reasonably expected benefits" in TNI membership. (Defs.' Mot. to Dismiss 14.) Plaintiff contends that Defendants have breached the implied covenant of good faith and fair dealing in two ways: (1) by marketing and selling their MedOne policy as "group" insurance with the implication that rates were to be spread equally over all group policyholders at the same rate (Compl. ¶ 2); and (2) by applying portions of membership fees paid to TNI as added remuneration to AMS. (Compl. ¶ 2.)

The law implies a covenant of good faith and fair dealing in every contract. *Rawlings*, 726 P.2d at 569 ("The duty arises by virtue of a contractual relationship."). The implied covenant can be breached when one party prevents the other party from receiving the benefits of the bargain or contract. *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1163 (D. Ariz. 2005). Arizona law holds that a party can recover under a breach of implied covenant of good faith and fair dealing even if an express provision of the underlying contract has not been breached. *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 760 (Ariz. Ct. App. 2006).

- 11 -

Even if the Court were to find that MedOne policy is not group insurance under Arizona law, the Court could find that Defendants prevented Plaintiff from receiving the benefit of the bargain or contract, and thus had breached the implied covenant of good faith and fair dealing.  Here, since the Court is not prepared to determine whether the MedOne policy is group insurance, the Court cannot find, as a matter of law, that there is not a valid claim for breach of the covenant of good faith and fair dealing in reference to AMS. However, as the claim relates to TNI, the Plaintiff has not sufficiently alleged how the payment of membership fees from TNI to AMS constituted a loss of a benefit to Plaintiff. Therefore, the claim for breach of the implied covenant of good faith and fair dealing pertaining to TNI cannot go forward.

### H.     *Consumer Fraud Act and the Unfair Insurance Practice Act*

Defendant argues that Claims Five and Six of the Complaint should be dismissed for lack of particularity. (Defs.' Mot. to Dismiss 14-16.)  The Arizona Consumer Fraud Act, A.R.S. § 44-1521 (Claim Five) and the Unfair Insurance Practices Act, A.R.S. § 20-443 (Claim Six) are both statutory fraud claims and have identical elements.   In Arizona to prevail under a statutory fraud claim, a plaintiff must show (1) a false promise or misrepresentation made in connection with sale or advertisement of merchandise, and (2) consequent and proximate injury. *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). In addition, allegations of fraud must be specific enough to give Defendants notice of the particular misconduct, so to allow them the ability to defend against the charge by doing more than just denying the allegation. Fed. R. Civ. P. 9 (requiring that averments of fraud be plead with particularity).

Federal rules require that the circumstances constituting fraud "be stated with particularity."  Fed. R. Civ. P. 9(b).  However, the essence of Rule 9 is to ensure that a plaintiff "conduct[s] a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).  In addition, it ensures that a defendant has sufficient information to formulate a defense by providing adequate

notice of both the nature and grounds of the claim. *Concha v. London*, 62 F.3d 1493, 1502-1503 (9th Cir. 1995).

Here, Defendants argue that Plaintiff has not pled each element of fraud with the necessary specificity required by Rule 9. (Defs.' Mot. to Dismiss 14-15.) Plaintiff asserts that statutory fraud claims do not require the level of particularity that common law fraud allegations require and therefore, they have met the requirements under the Consumer Fraud Act and Unfair Insurance Practices Act. (Pl.'s Resp. 12-14.) Here, Plaintiff has alleged both that (1) Defendant's acts and omissions constitute misrepresentations and concealments in connection with the sale or advertisement of merchandise and (2) as a direct and proximate result of Defendant's misrepresentations and concealments, Plaintiff and the class have suffered an injury. (Compl. ¶¶ 47–49, 50–52.) Plaintiff alleges that Defendants sold the MedOne health insurance policy to Plaintiff as a purported group policy. (Compl. ¶ 2.) However, Plaintiff argues that instead of actually receiving a group insurance policy, she received a policy in which the premium renewals were calculated based upon individual underwriting criteria. (Compl. ¶ 2.) Thus, Plaintiff alleges it was not group insurance. (Compl. ¶ 2.) In addition, Plaintiff alleges that she was required to pay membership fees to TNI for the MedOne policy and a portion of those fees were fraudulently paid to AMS in the form of a kickback. (Compl. ¶ 3.) By failing to disclose this information to Plaintiff, it artificially inflated the actual cost of TNI's services for the pecuniary gain of AMS. (Compl. ¶ 3.) Plaintiff claims that she received an injury in the form of increased premium costs and inflated membership fees. (Compl. ¶ 4.)

Therefore, the Court finds that Plaintiff has pled her claim for fraud with enough particularity to sufficiently put Defendants on notice.

## I.     *Leave to Amend*

Defendants assert that Plaintiff should be denied leave to amend the Complaint. (Defs.' Reply 8.) However, Plaintiff has the right to amend the complaint once "as a matter of course" any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). A motion to dismiss is not a "responsive pleading" within the meaning of Rule 15, and neither the

- 13 -

filing nor granting of such a motion before the answer terminates the right to amend. Fed. R. Civ. P. 7(a); *Doe v. United States*, 58 F.3d 494, 497-498 (9th Cir. 1995). Here, a responsive pleading has not been filed. Therefore, Plaintiff is allowed to amend the Complaint once as a matter of course.

## CONCLUSION

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in part (Dkt. 27).

**IT IS FURTHER ORDERED** that the Breach of Fiduciary Duty claim against Defendant TNI is **DISMISSED.**

**IT IS FURTHER ORDERED** that the Breach of Contract claim against Defendant TNI is **DISMISSED.**

**IT IS FURTHER ORDERED** that the Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant TNI is **DISMISSED.**

**IT IS FURTHER ORDERED** that the balance of the Motion to Dismiss is **DENIED**.

DATED this 12th day of May, 2008.

Stephen M. McNamee
United States District Judge